UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22533-CIV-DUBÉ

**CONSENT CASE**

MARIA VILLEGAS,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## **MEMORANDUM ORDER**

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #21) and the Motion for Summary Judgment filed by the Defendant (D.E. #24) pursuant to the consent of the parties and an Order of Reference entered by the Honorable Marcia G. Cooke, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Maria Villegas (hereinafter "Villegas" or "Plaintiff").

### **I. FACTS**

Villegas filed applications for disability insurance benefits and for supplemental security income. (R. 142-146).[1] The applications were denied initially and on reconsideration. (R. 30-32, 91-92, 94-97). Two preliminary hearings were held on February 6, 2008 (R. 706-712) and on July 30, 2008 (R. 713-723), wherein the Plaintiff did not testify. A third hearing was held on October 16, 2008. (R. 724-753). Following the hearing, the ALJ issued a decision denying the request for

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer. A copy of the SSI application does not appear in the record but is referred to by the ALJ in the decision. (R. 15).

benefits. (R. 12-27). A request for review filed with the Appeals Council was denied. (R. 5-8).

The Plaintiff, age 48 at the time of the hearing on October 16, 2008, testified she has two years of college education. Villegas stated she has not worked since 2000 because she got meningitis. The Plaintiff submitted her previous work was as an emergency shelter parent for Children and Family, and she also did medical billing and collections. (R. 728). Villegas explained she worked in medical offices and at Mercy Hospital doing medical collections. According to the Plaintiff, after she stopped working in 2000, she continued to work part-time. (R. 729).

Villegas testified that from 2000 to 2002, she worked from her home selling jewelry. She further testified it was not a job and she sold the jewelry to "survive." (R. 730). The Plaintiff stated she previously collected Bromeliad so she sold the Bromeliad in order to feed her family. Villegas believes she stopped receiving money from Children and Family in 2001. (R. 731). The Plaintiff explained the reasons she could no longer work as follows:

> Well, I can barely get out of bed sometimes. I don't hear. I get headaches if I bend down. My first headache of the day is when I have my first bowel movement. If I bend down, if I sneeze, if I raise my voice, if I cough, I suffer very bad muscle spasms on my neck and a lot of pain. I have got four herniated discs. I've got a pinched nerve. I get a lot of problems. Every three months I get pus coming out of my ear because I [am] prone to infection. I am in pain 24 hours a day. I barely get out of bed. I get out of bed to take my kids to school, come back and go back to bed. My arms and my legs are not working, because I have very, very bad meningitis – I mean, osteoarthritis. And my right thumb does not work, because it's completely deformed from the osteoarthritis. So I cannot even write a check without my hand cramping up.

(R. 731-732).

Villegas stated she has a driver's license and a car, and drives about a mile a day to take her daughters to school. She added that if she needs groceries, her 14 year old son gets them for her. The Plaintiff testified she sees a doctor for her ears every three months because she gets chronic

infections. (R. 732). The Plaintiff asserted she has been seeing a psychologist for the past month or two prior to the hearing on the recommendation of her ENT. In January or February 2008, she had mastoid surgery on her left ear and she can no longer hear out of the left ear. (R. 733). According to Villegas, two years after being diagnosed with meningitis, she required surgery on her brain.

The Plaintiff claimed she takes six medications for various problems such as, anti-inflammation, arthritis, fibromyalgia, and pain. The Plaintiff testified she does not sleep more than two hours at a time at night because her back hurts, and her arms and knees get bad. (R. 734). Villegas further testified she has three torn meniscus in her left knee and is on the waiting list at Jackson Memorial Hospital for surgery which the wait is a year and a half. Additionally, she testified she has a pinched nerve which feels, " ... like somebody is just squeezing the bottom of your legs." (R. 735).

Villegas asserted she can walk for 10-15 minutes but even that amount of time causes pain. She further asserted she uses a cane and cannot walk without one. The Plaintiff stated her husband drove her to the hearing. The Plaintiff also testified she can stand for 10-15 minutes before she gets cramps and an electrical sensation in her legs. (R. 735). According to the Plaintiff, she can sit for 15-20 minutes and needs her daughter to lift a gallon of milk. She added that lifting with her arms or bending causes her "really bad headache." The Plaintiff described how she spends the hours of 6:00 a.m. to 12 noon as follows:

> At 7:30, I take my daughter to school. Then I take my other daughter to school. Then I come home and I lay down. I try to wash some dishes and then wash two or three and I lay down. I spend most of my day laying down in bed. I get up. I walk around the house because even laying down hurts. So I walk a little. I lay down. I walk a little.

(R. 736). The Plaintiff said she watches very little television because she cannot hear and reading the words on the bottom of the screen gives her headaches. She also stated she reads a little because her

3

vision is not good and reading and wearing her glasses also gives her headaches. The Plaintiff testified her 14 year old son or her husband do the cooking. Villegas also testified she tries to clean once a month or her 14 year old cleans, otherwise the house is a mess. (R. 737).

According to the Plaintiff, as a result of the meningitis, she has suffered memory loss, earaches and chronic ear infections, loss of hearing and headaches. The Plaintiff testified she gets headaches daily and described them as follows:

> When the headaches come, you feel it on your back and it comes up through your head. And then it feels like something is blowing up inside your head. It's very, very unbearable for about 10 to 15 minutes and then after that, then you have like a normal migraine headache that stays for hours –

(R. 738). Villegas stated when she gets a headache, she must lay down and put her head down for 3 to 4 hours. The Plaintiff further stated she gets these types of headaches daily. According to the Plaintiff, she is deaf in her left ear, and "very deaf" in her right ear. She explained that if she wears "the hearing aid and if I'm close to the person, I can understand" unless she has an ear infection. (R. 739).

Villegas testified she has arthritis in both hands but it is worse in the right hand. She further testified she does not use her right thumb and cannot peel an apple or open a jar. The Plaintiff claimed that while the left hand is also bad, it is not as bad as her right hand. She explained that with her left hand she can hold her cane longer and open doors. (R. 740). Villegas explained she used a cane because of the pinched nerve and three torn meniscus. The Plaintiff testified she has a cervical herniation and three herniated discs in her lumbar. (R. 741).

In addition to the Plaintiff's testimony, Christina Fannin, a vocational expert, testified at the hearing. The VE testified that the Plaintiff's past relevant work was as an emergency shelter parent,

DOT#309.677-014, medium with an SVP of 3; and medical collections or billing, DOT #214.382-014, sedentary, with an SVP of 4. (R. 742-743). The vocational expert was asked what work a person who could lift or carry up to 20 pounds, sit for 8-hours, walk or stand for 3-hours, alternating positions could perform. (R. 745). The VE responded as follows:

> -- at her past relevant work, she would not be able to do the emergency shelter parent as performed or as described by the Dictionary of Occupational Titles, because they claim it's a medium position. As she describes it in the file, she describes it as a light position saying she only had to lift up to 10 pounds, because she was dealing with babies and then she was able to sit, stand and walk alternating. So she would be able to do it as she performed it but not as described by the DOT and she would be able to do the billing clerk with that residual functional capacity as well.

(R. 745-746). The VE also testified that said person could work as a cashier, DOT #211.462-010, light with an SVP of 2; but the occupational base would be reduced by about 15% because of the need to alternate between sitting and standing. (R. 746-747).

The VE further testified that said person could work as an office helper, DOT #239.567-010, light with an SVP of 2; and ticket seller, DOT #211.467-030, light with an SVP of 2; but the occupational base would be reduced by about 15% because of the need to alternate between sitting and standing. (R. 747-748). The VE listed sedentary positions that such a person could perform as follows: charge clerk, DOT #205.367-014, SVP of 2; order clerk for food and beverage, DOT #209.567-014, SVP of 2; and surveillance system monitor, DOT #379.367-010, SVP of 2. (R. 748).

The VE testified that if a person needed to lie down for three to four hours a day because of headaches, such a person would not be able to work. (R. 749). The VE also testified that if a person could not hear in the left ear but could in the right ear with a hearing aid the person could perform the Plaintiff's past relevant work as a emergency shelter parent and as a billing clerk because hearing

5

is only required occasionally. (R. 749-750). The VE stated that other jobs such as the cafeteria clerk and cashier would be impacted as a result of hearing limitations. (R. 750). With regard to the impact of arthritis, the VE testified as follows:

> ... as the billing clerk, she would need frequent to constant bimanual ability. So if she wasn't able to do frequent or constant bimanual ability, that would eliminate that job in regards to fingering and that's fine manipulation. So that would be where her – some would come in as well as handling for the grasp. Same with the foster parent, it would require frequent use of the hands. So if she could not use her right hand, that would be – that would eliminate the position. The cashier would require bimanual use of her hands. The office helper would be use of her hands, but she wouldn't necessarily – wouldn't have to rely on her – necessarily her dominant hand. And the ticket seller as well, she could use her non-dominant hand.

(R. 751).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following severe impairments: left knee condition, right knee pain, discogenic disease, status post craniotomy, hearing loss, and depression with anxiety. The ALJ next determined that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. (R. 18). The ALJ determined that the Plaintiff retained the residual functional capacity to:

> ... lift and carry 20 pounds occasionally and lift and carry 10 pounds frequently. She can push and pull similar amounts of weight. The claimant can sit for eight hours and stand and walk for three hours out of an eight hour workday, affording the opportunity to alternate

>positions at will. She can frequently balance, kneel, crouch and crawl. Occasionally climb ramp/stairs and stoop. The claimant has no manipulative or visual limitations. She has hearing limitations, however, she has the ability to communicate simple information and use the telephone. Finally, she has no mental limitations, which would have an adverse impact on her capacity to make occupational, performance adjustments to jobs entailing, simple repetitive functions, as unskilled work. The claimant's retained mental capabilities include at the least: understanding, remembering and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting.

(R. 19). The ALJ further determined that the Plaintiff is unable to perform her past relevant work. (R. 25). The ALJ concluded that based on the Plaintiff's age, education, work experience and RFC, there were jobs which existed in significant numbers in the national economy which the Plaintiff could perform, and thus, was not disabled within the meaning of the Social Security Act. (R. 26-27).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th

Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so

severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred in failing to provide good cause in discounting the opinion of the Plaintiff's treating physician.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th

Cir. 2004).

This Court previously held that, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla. 1996). Further, a treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F. 2d 513, 519 (11th Cir. 1984).

On July 17, 2008, the Plaintiff's treating physician, Dr. Breton, completed a Residual Functional Capacity Questionnaire. (R. 307-308). Dr. Breton opined the Plaintiff's impairments constantly interfere with the Plaintiff's attention and concentration. Dr. Breton further opined the Plaintiff could sit for 20 minutes at one time and stand for 15 minutes at one time. Dr. Breton stated the Plaintiff would require sitting in a recliner or lying down for 7-8 hours a day; and could only sit, stand and/or walk for less than 2 hours in an 8-hour workday. According to Dr. Breton, the Plaintiff would require the use of a cane when standing/walking. (R. 307). Dr. Breton opined that the Plaintiff was unable to work; and could occasionally lift and carry less than 10 pounds but never more. (R. 308). The ALJ rejected the opinion of Dr. Breton and stated as follows:

> The claimant submitted as evidence progress notes from her physician Dr. Cristian [Breton]. The notes show that Dr. [Breton] has seen the claimant only sporadically, since September 2007. During the year 2008, there are only three documented visits, the last one in July. He diagnosed the claimant with chronic otitis, with hearing loss, lumbar disc disease, severe osteoarthritis and chronic pain syndrome. However, the notes show that the claimant was in no acute distress and her extremities did not show clubbing, edemas or cyanosis. Dr. [Breton] also reported a full range of motion of the extremities. Despite this Dr. [Breton] prepared a residual functional capacity questionnaire in where he describes the claimant with a residual functional capacity compatible with less than sedentary work capacity and concludes that she is unable to work. Although Dr. [Breton] indicates that the claimant can only sit, stand or work less than two

10

> hours a day, he also indicates that she can sit seven to eight hours a day, and her impairments are not likely to produce good or bad days. (Exhibits 399 and 402).
>
> I must reject Dr. Benton's assessment as it conflicts with the other medical evidence of record including his own medical findings and conclusions, as discussed above (Exhibits 394F through 402F).

(R. 23). The ALJ also stated:

> Accordingly, Dr. [Breton's] conclusion that the claimant is disabled is not conclusive as to the issue of the claimant's disability within the meaning of the Social Security Act, since the same is not supported by clinical findings and inconsistent with the rest of the medical evidence on record. First of all it is internally inconsistent with his own evaluation and opinions and secondly, it is devoid of a detailed discussion or observations by which he supports his diagnosis.

(R. 24).

The Plaintiff more specifically contends that the ALJ erred in rejecting the treating physician's opinion based on sporadic treatment, the ALJ replaced his opinion for that of the treating physician; the ALJ mischaracterized the evidence; and the Plaintiff was subsequently awarded benefits on a separate application. This Court agrees with the Plaintiff and finds that the ALJ did not provide the good cause required to reject the treating physician's opinion. First, contrary to the ALJ's finding that the Plaintiff only received treatment from Dr. Breton sporadically in 2007 and 3 times in 2008, the record demonstrates that the Plaintiff was seen by Dr. Breton since 2004. The regulations define a treating physician as follows:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required

> for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.
>
> We or us refers to either the Social Security Administration or the State agency making the disability or blindness determination.
>
> You or your means, as appropriate, the person who applies for benefits or for a period of disability, the person for whom an application is filed, or the person who is receiving benefits based on disability or blindness.

20 C.F.R. § 404.1502.

In the instant matter, Dr. Breton falls under the definition of a treating physician in accordance with the regulations. Additionally, while the Defendant is correct that in several of the treatment notes provided by Dr. Breton, the doctor indicates that the Plaintiff had a full range of motion and could ambulate without an assistive device (R. 423, 427, 429-430), other treatment notes are to the contrary and do indicate limitations to range of motion and the need for an assistive device. (R. 422, 424-426 424A, 431-432). These notes are indeed consistent with Dr. Breton's RFC wherein he opined that the Plaintiff did not have a full range of motion and required the assistance of an ambulatory device when standing or walking.

Additionally, the Plaintiff is correct in noting Dr. Breton previously noted that the Plaintiff had persistent low back pain, chronic headaches, increased anxiety, and stress and neck stiffness along with chronic pain. (R. 472-474). Furthermore, the ALJ mischaracterized Dr. Breton's opinion. The fact that Dr. Breton opined that the Plaintiff could sit, stand and walk for less than two hours in an

eight hour workday is not inconsistent with his finding that the Plaintiff would need to sit in a recliner or lie down 7-8 hours total a day. The ALJ's conclusion that the Plaintiff would not have "bad days" because Dr. Breton did not indicate the Plaintiff would have both "good days" and "bad days" is also not supported by substantial evidence as the opposite conclusion could easily be reached.

While the Court finds that remand is required to properly consider the opinion of Dr. Breton, the Court does not agree with the Plaintiff that a subsequent application which found the Plaintiff disabled is relevant to the instant matter. As the Defendant correctly notes, the application was based on a disability date 1 year after the ALJ's determination in this case and based on evidence which was not part of this record. The Court's finding regarding the Plaintiff's treating physician renders the Plaintiff's remaining two issues moot.

### III. CONCLUSION

Based on the foregoing, this Court finds that the decision by the ALJ is not supported by substantial evidence and that the correct legal standards were not applied. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1) The Motion for Summary Judgment filed by the Plaintiff (D.E. #21) is **GRANTED in part**.

(2) The Motion for Summary Judgment filed by the Defendant (D.E. #24) is **DENIED**.

(3) The decision by the Commissioner is **REVERSED** and this cause is hereby **REMANDED** for further proceedings consistent with this Order.

DONE AND ORDERED this __25__ day of June, 2010.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE